COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES and Elwood D. Yoder, Sherry Yoder, Bruce L. Yoder and Dorothy Yoder,

v.

PBS COALS, INC. and Fetterolf Mining, Inc.

Elwood D. Yoder, Sherry Yoder, Bruce L. Yoder and Dorothy Yoder, Appellants.

Commonwealth Court of Pennsylvania.

Argued March 14, 1996.

Decided June 3, 1996.

John E. Childe, for Appellants.

Gilbert E. Caroff, for Appellee, Fetterolf Mining, Inc.

James R. Cascio, for Appellee, PBS Coals, Inc.

Before McGINLEY and PELLEGRINI, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

Elwood D. Yoder, Sherry D. Yoder, Bruce S. Yoder and Dorothy Yoder (Appellants) appeal from an order of the Court of Common Pleas of Somerset County (common pleas court) which limited the award of attorney's fees to the Yoders to 40% of the original verdict.

On June 28, 1985, a decree nisi was entered in the common pleas court awarding damages to Appellants and requiring Fetterolf Mining, Inc. (Fetterolf) and PBS Coals, Inc. (PBS) to provide permanent alternative water supplies to Appellants and others. On April 19, 1986, the decree nisi became final. Fetterolf and PBS appealed the order to this Court which affirmed in an opinion and order dated December 15, 1987. *Department of Environmental Resources v. PBS Coals, Inc.*, 112 Pa.Cmwlth. 1, 534 A.2d 1130 (1987) (*PBS Coals I*).

On May 12, 1986, Appellants petitioned for attorney's fees which was denied by this Court. Our Pennsylvania Supreme Court denied Appellants' petition for allowance of appeal and this Court once again denied Appellants' appeal on reconsideration in an order dated December 6, 1988. This Court held that an appellate court had no power to award attorneys' fees for proceedings before a trial court. *Department of Environmental Resources v. PBS Coals, Inc.*, 122 Pa. Cmwlth. 541, 552 A.2d 714 (1988) (*PBS Coals II*).

In an order dated January 2, 1991, Senior Judge Charles H. Coffroth of the common pleas court denied Appellants' petition for allowance of attorney's fees as being premature. Sometime after January 2, 1991, Judge Coffroth retired and was replaced by Senior Judge Norman A. Shaulis. Finally, on August 22, 1995, Judge Shaulis entered an order directing that Fetterolf and PBS pay attorney's fees in the amount of 40% of the original verdict, together with interest at the rate of 6% per annum until the fees are paid. After Appellants filed a notice of appeal with this Court the common pleas court subsequently ordered them to submit a concise statement of matters complained of on appeal. Appellants prepared the statement and now allege it fell and was lost under the seat of the secretary's car before it was mailed. Appellants concede that it was mailed twelve days after it was due, but assert that, although untimely, the common pleas court received it well before the common pleas court issued its memorandum opinion.

■ Appellants request this Court to examine: 1) whether the common pleas court committed an abuse of discretion or an error of law when it based attorney's fees on 40% of the original verdict; 2) whether Appellants furnished proof of fees owing aside from the contingency fees already received; and 3) whether Appellants' late filing of the statement of matters complained of on appeal amounts to a waiver of those issues.[1] We note that an award of attorney's fees and costs is within the discretion of the trial court, whose discretion will not be disturbed on appeal absent abuse of discretion. *Car-*

---

1. We have foregone the sequence of Appellants' arguments.

penter v. Federal Insurance Co., 432 Pa. Superior Ct. 111, 637 A.2d 1008 (1994).

Initially, Appellants contend that the common pleas court committed an abuse of discretion or an error of law when it based attorney's fees on 40% of the original verdict. Appellants assert that the common pleas court erred because the January 2, 1991, order of Senior Judge Coffroth stated that fees were appropriate. Appellants assert that the January 2, 1991, order became the "law of the case", and the common pleas court could not ignore it without committing error.

Initially, we note that Section 601 of The Clean Streams Law (Law), Act of June 22, 1937, P.L.1987, *as amended,* 35 P.S. § 691.601, and Section 12(e) of the Surface Mining Conservation Reclamation Act (Act), Act of April 28, 1978, P.L. 202, *as amended,* 52 P.S. § 1396.18c (collectively, the Acts), provide the following identical language regarding attorney's fees:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate. The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accord with the Rules of Civil Procedure.

Appellants' assertion that the January 2, 1991, order of the common pleas court is the "law of the case" is actually a misuse of term. The "law of the case" doctrine is inapplicable here because the rule applies only to appellate courts. *Kuchinic v. McCrory,* 422 Pa. 620, 625 n. 7, 222 A.2d 897, 900 n. 7 (1966). Appellants are actually relying on a closely related doctrine which this Court discussed in *Farber v. Engle,* 106 Pa.Cmwlth. 173, 525 A.2d 864, 866 (1987):

> The general rule is that absent some new evidence, it is improper for a trial judge to overrule an interlocutory order entered by another judge of the same court involving the same issue. *Commonwealth v. Tyson,* 57 Pa.Commonwealth Ct. 569, 427 A.2d 283 (1981); *Sherman v. Yo-*

der, 59 Pa.Commonwealth Ct. 430, 430 A.2d 347 (1981). The policy underlying this rule, sometimes erroneously referred to by the term 'law of the case,' is that there must be some finality to the determination of all pretrial applications so that judicial economy and efficiency can be maintained. *Reifinger v. Holiday Inns, Inc.,* 315 Pa. Superior Ct. 147, 461 A.2d 839 (1983).

A review of the January 2, 1991, order by Senior Judge Coffroth reveals that the common pleas court stated the issues as follows: 1) whether Appellants waived their claim for attorney's fees by failing to raise it in post-trial motions pursuant to Pa.R.C.P. No. 227(b)(2); 2) if not waived, whether an allowance of attorney's fees and expenses is "appropriate" within the meaning of the Clean Streams Law and/or the Surface Mining Conservation Reclamation Act; and 3) if an allowance of attorney's fees is appropriate, what is fair and reasonable.

The common pleas court determined that Appellants did not waive their claim for attorney's fees and determined that fees were appropriate, stating, "We think that [Appellants] and their counsel have made a sufficient contribution to the success of the litigation to be classified as a partially prevailing party, and that an award of costs and counsel fees in some amount is 'appropriate'." Common Pleas Court Opinion, January 2, 1991, at 14. Finally, and of importance to the present controversy, the common pleas court, determined that an award of attorney's fees were premature until the litigation ended and accordingly deferred addressing Appellants' petition. The common pleas court's order dated January 2, 1991, specifically stated:

> [T]he petition of [Appellants] for an allowance of counsel fees and expenses is presently denied as premature, although otherwise appropriate in some amount to be determined at the conclusion of the litigation. The petition remains under advisement for further consideration at that time.

Order of the Court of Common Pleas of Somerset County, January 2, 1991.

The common pleas court's order of August 22, 1995, per Senior Judge Shaulis, stated:

> [A]fter hearing argument from counsel, it is the order of the court that the defendants shall pay counsel fees to the [Appellants] to the extent of forty (40) percent of the original verdict, together with interest at the rate of six percent per annum from this date until the extra fees are paid.

Order of the Court of Common Pleas of Somerset County, August 22, 1995. Here, because the common pleas court's order of January 2, 1991, specifically left open the question of the amount of attorney's fees, and because the order of August 22, 1995, only addressed the amount of attorney's fees, we conclude that the two orders are not contradictory and Appellant's argument must fail.

Second, Appellants assert that the common pleas court committed an abuse of discretion when it suggested that Appellants waived all objections to the August 22, 1995, order. The common pleas court noted that Appellants "have failed to comply with this Court's order of August 30, 1995, which allowed fourteen (14) days to respond in accordance with Pennsylvania Rules of Appellate Procedure 1925(b)." Common Pleas Court Opinion, October 3, 1995, at 3. Appellants contend that this failure resulted from a mistake because the envelope fell under the seat of a car and was not discovered for several days. Appellants note that copies were timely mailed to opposing counsel pursuant to the August 30, 1995, order and that the lost statement was discovered and a copy was delivered to the common pleas court on September 26, 1995, allowing sufficient time for the common pleas court to review its memorandum of October 3, 1995.

In *Commonwealth v. Johnson*, 309 Pa. Superior Ct. 367, 455 A.2d 654 (1982), the appellant failed to file a statement pursuant to Pa. R.A.P. No. 1925(b) within the time required, but filed a brief three to four days later advising the court of the matters complained of. The Superior Court noted that "[i]n deciding whether to hold an objection waived, we must examine the failure to comply with Rule 1925 in the context of the entire case. We must therefore always ask how serious was the failure." *Johnson* at 371, 455 A.2d at 656. Appellants assert that their failure to comply was not serious because all of the parties were served within the time prescribed by the common pleas court and because the error was discovered and remedied in time to allow the common pleas court to review it. We agree and note that the common pleas court's opinion of October 3, 1995, did not specifically conclude that the issues were waived. The opinion simply noted that Appellants failed to act timely. Accordingly, to the extent that the common pleas court determined that Appellants waived their objections to the order dated August 22, 1995, we conclude it erred.

Next, Appellants assert that the common pleas court incorrectly determined that a contingency fee agreement precludes an attorney from receiving statutory attorney's fees. We agree. In concluding that Appellants were limited to the amounts contemplated in the contingency agreement, the common pleas court relied on *National Bank of Topton v. Holland*, 190 Pa. Superior Ct. 501, 503, 154 A.2d 252, 253 (1959), for the proposition that "where the amount of fees is determined by a contingent agreement, there can be no recovery on quantum meruit." *National Bank of Topton*, however, involved the extension of a replevin action that had previously been filed, wherein attorneys were retained pursuant to a contingent agreement. An award was entered in favor of the client who had been declared bankrupt in the interim. The National Bank of Topton subsequently instituted an attachment execution on two judgments that had been entered against the client. Recovery by the bank depended upon whether funds were going to be available after payment of attorney's fees from the judgment in the replevin action. The trial court determined that notwithstanding the written contingency agreement the attorneys were entitled to fees based on quantum meruit. On review the Superior Court determined that there can be no recovery on quantum meruit where a written contingency agreement exists.

We feel that *National Bank of Topton* is distinguishable from the present matter. *National Bank of Topton* did not involve a statute which authorized an award of attorney's fees. In the present matter, our General Assembly specifically authorized an award of attorney's fees through Section 601 of the Law and Section 12(e) of the Act. The legislation is silent, however, as to how the award is to be determined. Because of this lack of guidance, we must resort to the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991, and decipher how the General Assembly intended that attorney's fees should be awarded.

■ Where the language of a statute is unclear and its words are not explicit, a court must ascertain the Legislature's intent in accordance with 1 Pa.C.S. § 1921.[2] *See Philadelphia Suburban Corporation v. Commonwealth*, 144 Pa.Cmwlth. 410, 601 A.2d 893 (1992), *rev'd on other grounds*, 535 Pa. 298, 635 A.2d 116 (1993). When a statute is ambiguous the court is authorized to ascertain the intent of the drafters through a consideration of the necessity for and the circumstances surrounding its enactment, the evil to be remedied and the object to be attained. 1 Pa.C.S. § 1921(c); *Kuzler Roofing, Inc. v. Department of Labor and Industry*, 68 Pa.Cmwlth. 642, 450 A.2d 259 (1982).

Accordingly, one factor to be considered is whether another statute is based upon the same or similar subjects. Initially, we note that this Court has held that the "objective of the Clean Streams Law is to prevent further pollution of Commonwealth waters as well as to restore polluted waters to their once clean state." *Department of Environmental Resources v. Borough of Carlisle*, 16 Pa. Cmwlth. 341, 330 A.2d 293, 298 (1974); Section 4 of the Law, 35 P.S. § 691.4(3). One of the stated purposes of the Act is "to protect and maintain the water supply." Section 1 of the Act, 52 P.S. § 1396.1. Our United States Supreme Court has noted that the Clean Water Act, 33 U.S.C. § 1251, et seq., has a similar purpose, stating "[t]he Clean Water Act anticipates a partnership between the States and the Federal Government, animated by a shared objective: to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." *Arkansas v. Oklahoma*, 503 U.S. 91, 101, 112 S.Ct. 1046, 1054, 117 L.Ed.2d 239 (1992). Further, we note that the Clean Water Act contains a provision which is almost identical to Section 601 of the Law and Section 21(e) of the Act. Section 505(d) of the Clean Water Act states:

> (d) Litigation costs. *The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.* The court may, if a temporary restraining order or preliminary injunction is sought, require the filing of a bond or equivalent security in accordance with the Federal Rules of Civil Procedure.

(Emphasis added).

■ Because there is no Pennsylvania case law interpreting the statutes and because the Clean Water Act encompasses similar aims, and because the provisions governing attorney's fees in all three of the acts are virtually identical, we find it appropriate to consider the Federal Courts' interpretation

---

2. 1 Pa.C.S. § 1921 states the following:
   (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.
   (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.
   (c) When the words of a statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

   (1) The occasion and necessity for the statute.
   (2) The circumstances under which it was enacted.
   (3) The mischief to be remedied.
   (4) The object to be attained.
   (5) The former law, if any, including other statutes upon the same or similar subjects.
   (6) The consequences of a particular interpretation.
   (7) The contemporaneous legislative history.
   (8) Legislative and administrative interpretations of such statute.

of the Clean Water Act for guidance in ascertaining our General Assembly's intent.

■ In *Student Public Interest Research Group of New Jersey v. AT & T*, 842 F.2d 1436, 1441–1442 (3d Cir.1988), the Third Circuit Court of Appeals explained the Federal Courts' interpretation of the fee-shifting language in the Clean Water Act.

The Supreme Court in *Blum v. Stenson*, 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), explained that the 'initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.' *Id.* at 888, 104 S.Ct. at 1544 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). Courts refer to the product of this equation as the lodestar. See *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546 [560–68] 106 S.Ct. 3088, 3096–99, 92 L.Ed.2d 439 (1986) (*Delaware Valley I*) (explaining the genesis of the lodestar approach and nomenclature).

Our United States Supreme Court has noted that the lodestar approach is used for all federal fee-shifting statutes.

Section 7002(e) of the [Solid Waste Disposal Act] and Section 505(d) of the [Clean Water Act] authorize a court to 'award costs of litigation (including *reasonable attorney ... fees*)' to a 'prevailing or substantially prevailing party.' 42 U.S.C. § 6972(e) (emphasis added); 33 U.S.C. § 1365(d) (emphasis added). This language is similar to that of many other federal fee-shifting statutes, see, e.g., 42 U.S.C. §§ 1988, 2000e–5(k), 7604(d); our case law construing what is a 'reasonable' fee applies uniformly to all of them. *Flight Attendants v. Zipes*, 491 U.S. 754, 758, n. 2, 109 S.Ct. 2732, 2734–2735, n. 2, 105 L.Ed.2d 639 (1989).

The 'lodestar' figure has, as its name suggests, become the guiding light of our fee-shifting jurisprudence. We have established a 'strong presumption' that the lodestar represents the 'reasonable' fee, *Delaware Valley I, supra*, 478 U.S., at 565, 106 S.Ct., at 3098, and have placed upon the fee applicant who seeks more than that

the burden of showing that 'such an adjustment is *necessary* to the determination of a reasonable fee.' *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 1548, 79 L.Ed.2d 891 (1984) (emphasis added).

*City of Burlington v. Dague*, 505 U.S. 557, 561–562, 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992) (emphasis in *Burlington*).

When confronted with an issue involving the fee-shifting provisions of the Federal Civil Rights Act, our United States Supreme Court specifically addressed whether a contingent-fee should control in *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). In *Blanchard*, a jury awarded the petitioner $10,000 in damages on his claim that respondent sheriff's deputy had beaten him and deprived him of his civil rights under 42 U.S.C. § 1983. The Federal District Court then awarded him $7,500 in attorney's fees under 42 U.S.C. § 1988, which provides that the court, "in its discretion, may allow ... a reasonable attorney's fee" to a prevailing party in certain federal civil rights actions, including those under § 1983. On appeal, the Court of Appeals reduced the fee award to $4,000, ruling that petitioner's 40% contingent-fee arrangement with his lawyer served as a cap on the amount of fees to be awarded. Ultimately, our United States Supreme Court reversed and held that the Court of Appeals inappropriately based the award on the contingent-fee alone.

The *Johnson* [*v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)] contingency-fee factor is simply that, a factor. The presence of a pre-existing fee agreement may aid in determining reasonableness. "The fee quoted to the client or the percentage of the recovery agreed to is helpful in demonstrating the attorney's fee expectations when he accepted the case." *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 723, 107 S.Ct. 3078, 3085, 97 L.Ed.2d 585 (1987) [(*Delaware II*)] quoting *Johnson*, 488 F.2d, at 718. But as we see it, a contingent-fee contract does not impose an automatic ceiling on an award of attorney's fees, and to hold otherwise would be incon-

sistent with the statute and its policy and purpose.

As we understand § 1988's provision for allowing a 'reasonable attorney's fee,' it contemplates reasonable compensation, in light of all of the circumstances, for the time and effort expended by the attorney for the prevailing plaintiff, no more and no less. Should a fee agreement provide less than a reasonable fee calculated in this manner, the defendant should nevertheless be required to pay the higher amount. The defendant is not, however, required to pay the amount called for in a contingent-fee contract if it is more than a reasonable fee calculated in the usual way. It is true that the purpose of § 1988 was to make sure that competent counsel was available to civil rights plaintiffs, and it is of course arguable that if a plaintiff is able to secure an attorney on the basis of a contingent or other fee agreement, the purpose of the statute is served if the plaintiff is bound by his contract. On that basis, however, the plaintiff should recover nothing from the defendant, which would be plainly contrary to the statute. And Congress implemented its purpose by broadly requiring all defendants to pay a reasonable fee to all prevailing plaintiffs, if ordered to do so by the court. Thus it is that a plaintiff's recovery will not be reduced by what he must pay his counsel. Plaintiffs who can afford to hire their own lawyers, as well as impecunious litigants, may take advantage of this provision. And where there are lawyers or organizations that will take a plaintiff's case without compensation, that fact does not bar the award of a reasonable fee. All of this is consistent with and reflects our decisions in cases involving court-awarded attorney's fees.

*Blanchard,* 489 U.S. at 93–94, 109 S.Ct. at 944–45. The Supreme Court also noted:

If a contingent-fee agreement were to govern as a strict limitation on the award

of attorney's fees, an undesirable emphasis might be placed on the importance of the recovery of damages in civil rights litigation. The intention of Congress was to encourage successful civil rights litigation, not to create a special incentive to prove damages and shortchange efforts to seek effective injunctive or declaratory relief. Affirming the decision below would create an artificial disincentive for an attorney who enters into a contingent-fee agreement, unsure of whether his client's claim sounded in state tort law or in federal civil rights, from fully exploring all possible avenues of relief. Section 1988 makes no distinction between actions for damages and suits for equitable relief. Congress has elected to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages.

*Blanchard,* 489 U.S. at 95–96, 109 S.Ct. at 945. Accordingly, the Supreme Court remanded for a determination of the lodestar.

▆▆ We find the reasoning in *Blanchard* instructive and persuasive and adopt it in the present controversy. We share the Supreme Court's fears that automatically limiting a fee award to the amount of the contingency agreement would defeat the purpose of the Acts and encourage pursuit of damages while discouraging the pursuit of equitable relief. Additionally, we agree that a contingency agreement is but one factor of many in determining the amount of attorney's fees due a prevailing party and that the fee agreement in such a situation is helpful in ascertaining the attorneys' fee expectations when accepting the case.[3]

Accordingly, we shall reverse the common pleas court's order and remand the present controversy for a lodestar determination of the fee Appellants are due.[4]

---

**3.** We note that the record in the present matter contains the sworn affidavit of Eugene E. Dice, Esquire, an attorney for the Yoders in the present matter. The affidavit notes that when entering into the contingency agreement, the parties understood that any attorneys fees obtained through the Acts would be used to offset any

contingent fee due. Affidavit of Eugene E. Dice, July 7, 1986, at 1; Reproduced Record at 134a.

**4.** Due to our disposition of the previous arguments, we need not examine Appellants' final argument that the common pleas court improperly determined that Appellants failed to furnish proof of fees owing aside from the contingency

## ORDER

AND NOW, to wit, this 3rd day of June, 1996, the order of the Court of Common Pleas of Somerset County at No. 73 Civil 1984, and dated October 3, 1995, is reversed and this matter is remanded for further proceedings consistent with this opinion.

Jurisdiction is relinquished.

fees already received. The record contains ample proof for determination of the lodestar amount.