**Mistick PBT v. Liss**

*P. Jerome Richey* and *James F. Glunt,* for plaintiffs.
*Michael D. Reed,* for defendants Liss.
*Eric L. Horne,* for defendants Marsonek.
*Scott A. Gould, Curtis N. Stambaugh* and *Kandice J. Kerwin,* for defendants Handee Marts Inc.
*Joseph E. Linehan,* for defendants Latterman.
*David G. Ries,* for defendant Bd. of Trustees of Community College of Allegheny Cty.
*Thomas G. Michalek,* for defendants Barrera.

WETTICK, *A.J.,* April 25, 2005—The parties' claims for counsel fees, expert witness fees, and other litigation costs are the subject of this opinion and order of court.

The parties' claims are based on 35 P.S. §6021.1305 (f) of the Storage Tank and Spill Prevention Act which provides, in relevant part, that:

"The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate."

Following a non-jury trial, in a January 27, 2003 memorandum and verdict, I dismissed the claims of plaintiffs based on the Storage Tank Act against Donald C. Marsonek, Donald and Diane Marsonek, Bernard and Rachel Latterman, and Handee Marts Inc. (defendants). (Defendant George Liss is referred to as Liss.)

At the non-jury trial, plaintiffs established that there are petroleum compounds in groundwater underneath their property and in the soil next to the groundwater. Plaintiffs also established that the properties of each of the defendants and Liss are within 2,500 feet of plaintiffs' property. Plaintiffs also introduced evidence that each of the defendants and Liss stored petroleum products in underground storage tanks located on their properties.

Under 35 P.S. §6021.1311(a), it is presumed, as a rebuttable presumption of law, that any person who owns or operates an underground storage tank within 2,500 feet of a plaintiff's property caused the contamination of the plaintiff's property if the plaintiff can establish that the defendant's property contained "a regulated substance of the type which caused the damage, contamination or pollution." This presumption may be overcome only by "clear and convincing evidence" that the person so charged did not contribute to the damage, contamination or pollution. This means that the plaintiff is not required

to prove that petroleum products related to the use of a defendant's storage tank are a source of the contamination on the plaintiff's property. Instead, the plaintiff will recover damages from the defendant caused by the contamination on the plaintiff's property unless the defendant can establish by clear and convincing evidence that it did not contribute to the contamination.

Section 6021.1311(b) of the Storage Tank Act provides that in order to overcome the presumption of liability, the owner or operator must "affirmatively prove, by clear and convincing evidence," one of the following:

"(1) The damages, contamination or pollution existed prior to the use of any storage tank at the facility to contain an accumulation of regulated substances, as determined by surveys of the site and within 2,500 feet of the perimeter of the storage tank or facility.

"(2) An adjacent landowner refused to allow the owner or operator of a storage tank at a new facility access to property within 2,500 feet of the perimeter of a storage tank facility to conduct a survey.

"(3) The damage, contamination or pollution was not within 2,500 feet of the perimeter of a storage tank.

"(4) The owner or operator did not contribute to the damages, contamination or pollution."

While none of the defendants stipulated that it was governed by the rebuttable presumption, in my January 27, 2003 ruling in favor of defendants, I assumed that the statutory presumption applied to each of the defendants.[1] I dismissed plaintiffs' claims under the Storage

1. Only Liss stipulated that plaintiffs' claims against him were governed by the rebuttable presumption.

Tank Act as to each defendant because I concluded that each defendant had affirmatively proven, by clear and convincing evidence, that it did not contribute to the damages, contamination, or pollution of plaintiffs' property.

My ruling was based on defendants' expert testimony which clearly and convincingly established that any contaminants introduced into the groundwater under defendants' properties could not have advanced to plaintiffs' property at the time plaintiffs discovered the contamination. I also found that defendants' experts established by clear and convincing testimony that the expert testimony of plaintiffs' expert, that contaminants could have travelled to plaintiffs' property via a sewer, was without substance.

## I.

Defendants seek to recover litigation expenses, including counsel and expert fees, under 35 P.S. §6021 .1305(f) based on my finding that they established by clear and convincing evidence that they did not contribute to the contamination.[2] Defendants correctly state that I found that there was a lack of credible evidence that would support plaintiffs' claims against defendants. However, this is going to be true whenever a plaintiff has triggered the presumption and the court rules in favor of the defendant. Consequently, if I accept defendants' position, I would be construing the provision, that the court "may"

---

2. The expenses for counsel and for experts that a defendant incurs in attempting to overcome the presumption are substantial. Handee Marts' expenses exceeded $415,000; Lattermans' expenses exceeded $305,000. (Marsoneks' expenses are less than $70,000 because they relied on evidence introduced by these other defendants.)

award the costs of litigation to a party, as providing for the award of attorney and expert witness fees whenever the defendant is the prevailing party.

The Storage Tank Act does not require the plaintiff who has triggered the presumption to present any evidence. Consequently, the plaintiff cannot be faulted for its failure to present evidence which the court finds to be credible in support of a showing that the defendant property owner contributed to the contamination of the plaintiff's property. Also, while I recognize that a plaintiff will have received a defendant's expert reports and witness lists prior to trial, ordinarily the plaintiff's counsel is not in a position to conclude that the defendant's evidence is so convincing that it is a waste of time and resources to make the defendant present evidence to overcome the presumption.

It is unlikely that the General Assembly enacted legislation which both (1) made it very easy for the plaintiff to trigger a presumption that had to be overcome by clear and convincing evidence and (2) made the plaintiff responsible for payment of the defendant's litigation expenses whenever the defendant overcame the presumption by clear and convincing evidence. However, it is consistent with the legislative scheme to award counsel fees to the defendant who overcomes the presumption in the situation where the plaintiff had to know that the defendant would prevail. (For example, the defendant could be liable only if the court found that water runs uphill.) Using this standard, I am not awarding litigation expenses to defendants.[3]

---

3. I am not awarding counsel fees to Handee Marts based on my finding that kerosene was not present on plaintiffs' property. Plain-

There is a second claim raised by defendants that has merit. As I will discuss, plaintiffs acted in bad faith. This resulted in a more lengthy trial (*i.e.,* additional counsel fees) and defendants incurring additional expert expenses.

Plaintiffs received defendants' initial expert reports in August 2002. Groundwater flow was a major issue that the reports addressed. Defendants' experts concluded that any pollution spills on defendants' properties could not have reached plaintiffs' property at the time plaintiffs discovered the contamination of their property because of the low groundwater velocity (the groundwater plane is almost flat).

All the experts (including plaintiffs' expert) agreed that groundwater flow velocity is based on three factors: hydraulic conductivity, hydraulic gradient, and effective porosity. Defendants' experts used a hydraulic gradient of .0011. Based on this gradient, defendants' experts testified that the groundwater traveled less than 12 feet per year.

In September 2002, after receiving defendants' expert reports, plaintiffs' expert witness (Mr. Miller/CEC) performed additional slug tests that were used to recalculate groundwater flow velocity. Based on the September 2002 slug tests, CEC calculated groundwater flow velocity at 223 feet per year; this was set forth in a supplemental report of October 31, 2002. Based on this calculation, plaintiffs' expert concluded that groundwater would carry contaminants from the vicinity of defendants'

tiffs' expert was well-qualified and his testimony was persuasive. I ruled in Handee Marts' favor on this issue because I found its expert to be more persuasive as opposed to finding that Handee Marts' expert offered the only persuasive testimony.

properties to plaintiffs' property in less than five years (as opposed to more than 100 years under defendants' calculations).

Subsequently, plaintiffs provided to defendants the data generated by CEC's September 2002 slug tests. Defendants' experts recognized that CEC had used incomplete data. Using the data that should have been used, they recalculated groundwater flow velocity, which resulted in numbers that were not far different from the numbers in their initial expert reports.

At the beginning of trial, plaintiffs offered Mr. Miller's supplemental report, including his erroneous calculations, as part of its prima facie case. Defendants then presented their case, which included expert testimony rebutting Mr. Miller's calculations in his October 31, 2002 report. Near the end of plaintiffs' rebuttal on the fourth day of trial during cross-examination, Mr. Miller admitted that his calculation of groundwater flow velocity was incorrect. He also stated that he agreed with the methodology of the recalculations performed by defendants' experts. Furthermore, he acknowledged that by mid-November 2002, he was aware of significant flaws in the calculation of groundwater flow velocity set forth in his October 31, 2002 supplemental report. This testimony on the fourth day of trial was the first time that plaintiffs acknowledged that the calculations in the October 31, 2002 supplemental report were erroneous.

The Lattermans submitted an affidavit showing that because of plaintiffs' failure to correct the October 31, 2002 supplemental report, the Lattermans expended an additional $10,312. Handee Marts introduced evidence showing that it expended an additional $9,731.99 be-

cause the supplemental report was not corrected when the error was discovered. I am awarding these litigation expenses to these defendants.

The Marsoneks did not incur extra expenses except for an extra day of trial. I am awarding counsel fees of $2,000.

## II.

I next consider the motion for counsel fees of the Board of Trustees of the Community College of Allegheny County. I am denying this claim because this defendant was dismissed through a motion for summary judgment based on a technical argument regarding the statute of limitations.

## III.

I next consider plaintiffs' claim for litigation expenses raised against Liss.

The trial focused on the presence of MTBE in the groundwater underneath plaintiffs' property. In my January 27, 2003 memorandum and verdict, I ruled that the evidence (using a clear and convincing standard) established that none of the parties that plaintiffs had sued, including Liss, was responsible for the MTBE contamination of plaintiffs' property.

In my January 27, 2003 verdict, I never addressed the issue of whether Mr. Liss' property may be the source of other contamination on plaintiffs' property. I assumed that, as of the date of trial, MTBE was the only contaminant that was the subject of plaintiffs' claims.

In their motion for post-trial relief, plaintiffs argued that Liss had failed to prove by clear and convincing

evidence that he was not responsible for other contaminants (BTEX) found on plaintiffs' property in 1992 and 1996 testing and for cumene at MW-100. In a June 5, 2003 court order, I scheduled an argument limited to the issue of whether Liss had established by clear and convincing evidence that he was not responsible for the BTEX/cumene contaminants on plaintiffs' property.

Through a memorandum and order of court dated September 3, 2003, I stated that I did not find, using a clear and convincing standard, that Liss had established that gasoline spills (which may have occurred on his property from the 1940s to the 1960s) could not have travelled from his property to plaintiffs' property. Through a January 22, 2004 memorandum and verdict, I awarded money damages of $445,466 to plaintiffs against Liss for the BTEX/cumene contaminants on account of Mr. Liss' failure to establish by clear and convincing evidence that gasoline spills on his property could not have been a source of these contaminants.

I am not awarding litigation expenses to plaintiffs. I entered a verdict against Liss solely because he was unable to overcome the statutory presumption by clear and convincing evidence. I find that the weight of the evidence did not support a finding that any gasoline spills which may have occurred on the Liss property from the 1940s to the 1960s caused BTEX/cumene contamination of plaintiffs' property as detected in the 1992 and 1996 testing and the 2001 testing as to cumene. I found to be persuasive (using a preponderance of the evidence standard) the testimony of defendants' experts which would support Liss' claim that he did not contribute to the BTEX/cumene contamination. I did not find the testimony of plaintiffs' expert on this point to be credible.

I do not find an award of litigation costs to be appropriate under 35 P.S. §6021.1305(f) where the damage award was entered against Liss, only because of Liss' failure to overcome the presumption that he was responsible for the contamination of the plaintiffs' property by clear and convincing evidence. In other words, litigation expenses should not be awarded against a defendant who has established that it is more likely than not that this defendant did not contribute to the contamination of a plaintiff's property. This would appear to be a situation that the legislature had in mind when, instead of mandating the award of litigation costs to a plaintiff who prevails, it used in 35 P.S. §6021.1305(f) the language that the court "may" award costs of litigation whenever the court determines that such award "is appropriate." [4]

Because of this ruling, I need not consider Liss' arguments that even if litigation costs should be awarded, I should not award any money for plaintiffs' expert witness fees because I rejected the opinions of these experts and that in awarding litigation costs I should take into account that most of the trial was spent trying to prove that the other defendants and Liss were the source of the MTBE contamination (an issue on which Liss prevailed) and plaintiffs could have settled the case with Liss for more than the amount of the award.

## IV.

My decisions to limit the parties' recovery for litigation costs are based on the language of 35 P.S. §6021

4. In this case, I am not deciding the manner in which a court shall exercise its discretion where the preponderance of the evidence does not support a defendant's contention that it did not contribute to the harm.

.1311(a) and the apparent purposes of the Storage Tank Act. In Sections I-III of this opinion, I did not cite any Pennsylvania appellate court case law, because I did not find any Pennsylvania appellate court cases that would provide guidance to this court in construing 35 P.S. §6021.1311(a).

Both parties cited *Department of Environmental Resources v. PBS Coals Inc.,* 677 A.2d 868 (Pa. Commw. 1996). In that case, the plaintiffs prevailed in litigation under the Clean Streams Law and the Surface Mining Conservation Reclamation Act, both of which provide that the court "may award costs of litigation (including attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." This case does not provide any guidance because the sole issue that the court addressed was whether a contingent fee agreement precludes an attorney from receiving statutory attorney fees.

In *Krebs v. United Refining Company of Pennsylvania,* A.D. no. 97-10236 (Butler Cty. 12/2/2003), in a memorandum opinion and order of court, Judge Shaffer, following a trial in which damages were awarded in favor of the plaintiff under the Pennsylvania Storage Tank Act, declined to award counsel fees to the plaintiff. He stated that under section 1305(f), by using the word "may," the General Assembly intended to allow for discretionary awards of litigation costs. There is no language that requires a court to award fees and costs.

In *Bruni v. Exxon Corp.,* 52 D.&C.4th 484 (Allegheny Cty. 2001), Judge Horgos did not award litigation costs to the plaintiffs following a finding that the defendants were liable for damages under the Storage Tank Act. He

stated that section 1305(f) authorizes the court in its discretion to award the cost of litigation " 'whenever [a] court determines such [an] award is appropriate.' 35 P.S. §6021.1305(f). Plaintiffs do not provide any compelling reasons for such an award, and the court can find none." *Id.* at 501.

For these reasons, I enter the following order of court:

## ORDER

On April 25, 2005, it is ordered that:

(1) litigation costs in the amount of $9,731.99 are awarded to Handee Marts Inc.;

(2) litigation costs in the amount of $10,312 are awarded to Bernard and Rachel Latterman;

(3) litigation costs in the amount of $2,000 are awarded to Donald and Diane Marsonek; and

(4) all other requests for litigation costs are denied.